UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, <br><br>3180 Fairview Park Drive, Suite 400<br>Falls Church, VA 22042<br><br> Plaintiff,<br><br>v.<br><br>JLK MECHANICAL, LLC.<br><br>7466 Grove Street<br>Swartz Creek, MI 48473<br><br>and<br><br>BEAR CUB LAND, LLC<br><br>7466 Grove Street<br>Swartz Creek, MI 48473<br><br>and<br><br>VORTEX, INC.<br><br>7466 Grove Street<br>Swartz Creek, MI 48473<br><br>Defendants. | CIVIL ACTION NO.  1:22-cv-1145<br><br><br>**Additional Required Service under 29 U.S.C. § 1132(h) to:**<br><br>**U.S. Department of Labor**<br>**Attn: Assistant Solicitor**<br>**for Plan Benefits Security**<br>**200 Constitution Ave., N.W.**<br>**Washington, DC 20002**<br><br>**U.S. Department of Treasury**<br>**Attn: Secretary of the Treasury**<br>**1500 Pennsylvania Avenue, NW**<br>**Washington, D.C. 20220** |

## **COMPLAINT**

Plaintiffs, the Board of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF" or "Fund"), hereby complains as follows:

1

**Introduction**

1. This is a civil action brought by an employee benefit plans/trust fund, and by the Trustees of the Fund, pursuant to Sections 502(a)(3), (d)(1), (g)(2), 515, 4219, 4221, and 4301 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), 1145, 1399, 1401, and 1451, and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185. The Fund seeks a monetary judgment against Defendants awarding withdrawal liability, accrued interest, liquidated damages, and attorneys' fees and costs, through the date of judgment, as well as those amounts that become due and owing through the date of judgment, pursuant to Sections 502, 515, and 4301 of ERISA, 29 U.S.C. §§ 1132, 1145, 1399, 1401, and 1451, Section 301 of the LMRA, 29 U.S.C. § 185, the collective bargaining agreement, and the Trust Document governing the Fund.

**Jurisdiction and Venue**

2. Jurisdiction is conferred upon this Court by Sections 502(e), (f) and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), (f) and 1451(c), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), Section 4301(d) of ERISA, 29 U.S.C. § 1451(d) and Section 301(a) of the LMRA, 29 U.S.C. § 185(c), as the Plaintiff Fund is administered in this district with its principal place of business in Falls Church, Virginia.

4. Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this Complaint will be served upon the Secretary of United States Department of Labor and the Secretary of the United States Department of the Treasury by certified mail on or about the date of filing.

**Parties**

5. Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund ("NPF") is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the NPF are duly authorized Trustees whose duty it is to administer the NPF for the benefit of the participants and beneficiaries of the NPF. The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually or jointly referred to as "NPF" in this Complaint. The NPF is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, VA 22042.

6. The Trustees of the Plaintiff Fund bring this action in their collective names or, as necessary or appropriate, in the name of the Fund, and its participants, and beneficiaries pursuant to Federal Rule of Civil Procedure 17.

7. At all times relevant to this action, Defendant JLK Mechanical, LLC ("JLK"), has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief,

at all times relevant to this action, JLK has been incorporated in the state of Michigan with a principal place of business at 7466 Grove Street, Swartz Creek, MI 48473.

8. At all times relevant to this action, Defendant Bear Cub Land, LLC ("Bear Cub"), has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, Bear Cub has been incorporated in the state of Michigan with a principal place of business at 7466 Grove Street, Swartz Creek, MI 48473.

9. At all times relevant to this action, Defendant Vortex, Inc. ("Vortex") has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, Vortex has been incorporated in the state of Michigan with a principal place of business at 7466 Grove Street, Swartz Creek, MI 48473.

## Factual Background

**A.  JLK's Obligations**

10. At all times relevant to this action, JLK employed employees represented for the purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Union (formerly known as the Sheet Metal Workers' International Association), Local Union 7-4 ("Local 7-4" or the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

11. At all times relevant to this action, until May 1, 2017, JLK was signatory to, and bound by, a collective bargaining agreement ("Agreement" or "CBA") with the Union. Pursuant

4

to the Agreement, JLK was obligated to submit monthly remittance reports and fringe benefit contributions to the NPF for all hours worked or paid on behalf of its covered employees.

12. Pursuant to the Agreement, JLK was obligated to abide by the terms and conditions of the Trust Agreement establishing the Fund, including any amendments thereto and policies and procedures adopted by the Board of Trustees ("Trust Document").

**B.   Withdrawal Liability**

13. The NPF determined that JLK had affected a complete withdrawal from the NPF on or about May 1, 2017 within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).

14. The NPF sent a notice of withdrawal to JLK on April 3, 2019 and to Vortex as a successor and/or alter ego entity to JLK on June 7, 2019 advising JLK, Vortex, and "all other trades or businesses under common control" of JLK of the owed withdrawal liability to the NPF resulting from JLK's withdrawal.

15. Further, notice to one member of the control group constitutes notice to all members of the group. *See McDonald v. Centra, Inc.,* 946 F.2d 1059, 1062 (4th Cir.1991); *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Delaware Valley Sign Corp.*, 945 F. Supp. 2d 649, 657 (E.D. Va. 2013); *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Kiko Heating & Air Conditioning, LLC*, No. 1:10CV396, 2010 WL 11562056, at *2 (E.D. Va. Dec. 17, 2010).

16. These notices informed Defendants that withdrawal liability was assessed in the amount of $55,838.58 and that it was amortized, as required by Section 4219(c) of ERISA, 29 U.S.C. § 1399(c), in a payment schedule to 19 quarterly payments in the amount of $3,412.75 each, with the first payment being due August 15, 2019, and the final payment of $2,105.86 due on February 15, 2024.

17. In accordance with Section 4219(b)(2)(A) of ERISA, 29 U.S.C. §1399(b)(2)(A),

Defendants had ninety (90) days from receipt of the initial notice and demand to request a review of the amount of the liability and/or the schedule for the payments. Defendants did not request review of the withdrawal liability assessment.

18. Pursuant to Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1), regardless of whether Defendants chose to request review of the withdrawal liability assessment, the first withdrawal liability payment was due on August 15, 2019. Defendants failed to make the first scheduled payment. To date, Defendants have failed to make any payments in accordance with the payment schedule.

19. By letter dated May 6, 2019, the NPF notified JLK of their failure to make the first payment under the amortized payment schedule and provided the opportunity for JLK to cure the delinquency. The NPF also notified JLK in this letter that the failure to correct this delinquency within sixty days of receipt of the letter would constitute a default within the meaning of Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), and that the NPF would file a suit against JLK and any other trades or businesses under common control to collect the full amount of withdrawal liability.

20. Pursuant to 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), a party is in default if it has not cured its failure to pay its withdrawal liability installment payments within sixty (60) days following a demand. In the event of default, the plan "may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5).

21. Defendants did not cure the failure to pay the first payment in accordance with the payment plan. Defendants have failed to make any of their statutorily required withdrawal liability

payments. Accordingly, Defendants are in default and are liable for the remaining unpaid principal of the withdrawal liability.

22. Defendants are also liable for interest, liquidated damages, and reasonable attorneys' fees and costs in accordance with the Trust Document and applicable federal law, 29 U.S.C. § 1451(b), (e).

23. The Trust Document provides that interest shall be charged on any amount in default (including accrued interest), from the date the payment was due to the date it is paid. The interest shall be computed and charged at a rate of 0.0205% compounded daily.

24. The Trust Document further provides that in the event of default, an employer is liable to the Fund for attorneys' fees incurred by the Fund from the date of the delinquency forward and costs, and the greater of (1) interest on the delinquent withdrawal liability or (2) liquidated damages in the amount of 20% of the delinquent withdrawal liability.

**C.     Defendant Bear Cub Is Part of JLK's Controlled Group.**

25. ERISA mandates that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." ERISA Section 4001(b)(1), 29 U.S.C. § 1301(b)(1). A group of trades or businesses under common control is generally referred to as a "controlled group."

26. Regulations promulgated under ERISA Section 4001(b)(1), 29 U.S.C. § 1301(b)(1), have adopted by reference the Internal Revenue Service's regulations defining "trades or businesses under common control" found at 26 C.F.R. § 1.414(c)-1 et seq. 29 C.F.R. § 4001.3(a)(1).

27. Because members of a controlled group are treated as a single employer, the "controlled group" is the "employer" for purposes of determining and assessing withdrawal liability, and all members of the controlled group are jointly and severally liable with one another.

28. Section 1563(a) of the Internal Revenue Code provides certain tests to determine whether a controlled group situation exists. A brother-sister control group is a group of two or more corporations, in which five or fewer common owners own directly or indirectly a "controlling interest" of each group and have "effective control." According to 26 C.F.R. § 1.414(c)-2(b)(2), "controlling interest" is defined as 80 percent or more of the stock of each corporation. According to 26 C.F.R. § 1.414(c)-2(c)(2), effective control means 50 percent of the stock of each corporation but only to the extent such stock ownership is identical with respect to such corporation.

29. Upon information and belief, Bear Cub and JLK are a brother-sister controlled group.

30. As members a controlled group, Bear Cub and JLK are jointly and severally liable for the withdrawal liability assessed as a result of JLK's withdrawal from the Fund, plus accrued and accruing interest, liquidated damages, and attorneys' fees and costs.

**D.     Defendant Vortex Is a Successor and/or Alter Ego Employer to JLK.**

31. Although Vortex is not signatory to the CBA with Local 7-4, Vortex is a successor and/or alter ego employer to JLK, and thus is liable for JLK's obligations to the Funds.

32. In 2017, the Trustees of Flint Area Sheet Metal Workers' Local 7-4 Pension Plan and the Trustees of Flint Area Sheet Metal Workers' Local 7-4 Health Care Fund (collectively, the "Local Funds") sued JLK in the US District Court for the Eastern District of Michigan for delinquent contributions, interest, and liquidated damages. *See* Case No. 2:17-cv-11305. On May

1, 2018, JLK consented to judgment in the amount of $469,148.86. JLK never made any payments toward the judgment.

33. Defendant Vortex was incorporated on July 31, 2018, less than 3 months after the Consent Judgment was entered.

34. Defendant Vortex substantially continued the operations of JLK upon JLK's winding down of business following the Consent Judgment. Defendants shared an interrelation of operations, common management, centralized control of labor relations, and business purpose and Vortex continued to operate with JLK's assets, equipment, customers, and employees. Specifically:

a. JLK and Vortex are wholly owned by Jamie Lynne Kittle;

b. JLK reported hours worked to the Local Funds for employees Thomas J. Brady, Brian K. Garno, and James P. Garno. These three individuals are also employees and officers of Vortex and have continued to perform covered work for Vortex;

c. In October 2018, JLK wrote checks to Vortex at which time JLK also began to wind down the use of its business checking account which was overdrawn by January 2019;

d. On or about March 28, 2019, a payroll auditor engaged by the Local Funds, placed a call to JLK's phone number, (840) 635-3330, and was told by the operator that the business is now known as Vortex;

e. JLK and Vortex both operated out of the same address at 7466 Grove Street, Swartz Creek, MI 48473. JLK signage had been removed from the building as of April 4, 2019;

f. Vortex uses JLK's equipment;

9

g. JLK and Vortex employ the same classification or similar classification of employees, those employees have the same or similar training, and JLK and Vortex perform the same type of work in the same industry in the same geographic market.

35. Because Vortex is not signatory to a Local 7-4 collective bargaining agreement, JLK has benefited through the elimination of its labor obligations while its successor and/or alter ego, Vortex, continued to perform covered work. By performing the same work in the same industry with the same employees as JLK, but now as a non-union operation, Vortex is reaping the financial advantage of not providing benefits as required by its Local 7-4 collective bargaining agreement, including its pension obligations and avoiding payment of the consent judgment to the Local funds.

36. As a successor and/or alter ego of JLK, Vortex is an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and jointly and severally liable for any obligations of JLK arising from the CBA.

**Count I**
*Withdrawal Liability*

37. Plaintiffs reallege and incorporate Paragraphs 1 through 36.

38. This claim arises under ERISA Sections 502(a)(3), (d)(1) and (g)(2), 515, 4219, 4221, and 4301, 29 U.S.C. §§ 1132(a)(3), (d)(1) and (g)(2), 1145, 1399, 1401, and 1451.

39. JLK has failed to pay amounts owed for withdrawal liability for a period greater than sixty (60) days after notification of failure by the NPF. As a result, JLK is in default under Section 4219 of ERISA, 29 U.S.C. § 1399(c)(5).

40. Because Bear Cub is in the same controlled group as JLK, Bear Cub is jointly and severally liable for JLK's withdrawal liability.

41. Similarly, because Vortex is a successor and/or alter ego employer to JLK, Vortex

is jointly and severally liable for JLK's withdrawal liability.

42. As a result of Defendants' failure to cure their default on withdrawal liability installment payments to NPF, Defendants are jointly and severally liable for the full principal amount of the withdrawal liability assessment pursuant to the Trust Document and Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5) in the amount of $55,838.58.

43. As a result of Defendants' failure to timely remit the withdrawal liability amounts owed to NPF, Defendants are liable for interest on all late payment amounts according to the Trust Document and Section 4219(c)(5) of ERISA in the amount of at least $13,931.84 (calculated through October 31, 2022). Interest continues to accrue on these unpaid amounts until the date of payment.

44. As a result of Defendants' failure to timely remit the withdrawal liability amounts owed to NPF, Defendants are liable for liquidated damages in an amount equal to the greater of interest on the delinquent withdrawal liability calculated at the above rate, or 20% of the delinquent withdrawal liability according to the terms of the Trust Document and federal law in the amount of at least $13,931.84.

45. As a result of Defendants' failure to timely remit the withdrawal liability amounts owed to NPF, Defendants are liable for the reasonable costs and attorneys' fees incurred in connection with this action according to the terms of the Trust Document and federal law.

46. Prior to commencing this lawsuit, the NPF sent letters and attempted to directly contact Defendants to obtain the outstanding contributions from Defendants. Defendants have not cured their default. There is little prospect that, lacking judicial compulsion, Defendants will satisfy their obligations to the NPF, and pay the delinquent withdrawal liability and liquidated damages and interest on the delinquent withdrawal liability.

**WHEREFORE**, Plaintiff requests a judgment against Defendants for all amounts due to the Fund as follows:

1. Declare that Defendant Vortex is a successor and/or alter ego employer to JLK and are joint and severally liable for each other's debts;

2. Declare that JLK has defaulted on its withdrawal liability;

3. Enter judgment against Defendants on behalf of NPF for the entirety of JLK's withdrawal liability, in the amount of $55,838.58;

4. Enter judgment against Defendants on behalf of NPF for interest on the delinquent withdrawal liability payments at a rate of 0.0205% per day, compounded daily, from the date due until the date paid or the date of the judgment, in the amount of at least $13,931.84

5. Enter judgment against Defendants on behalf of NPF for liquidated damages in an amount equal to the greater of interest on the delinquent withdrawal liability calculated at the above rate, or 20% of the delinquent withdrawal liability, in the amount of at least $13,931.84;

6. Enter judgment for all attorneys' fees and costs incurred by the NPF in pursuing the delinquent amounts as provided by Section 502(g) of ERISA; and

7. Award such other relief as the Court deems just and proper.

Respectfully Submitted,

　　/s/ John R. Mooney　　
John R. Mooney (Bar No. 22212)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 facsimile
jmooney@mooneygreen.com
*Counsel for Plaintiff Fund*

Dated: October 12, 2022

## CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)

I hereby certify that on this 12th day of October, 2022, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR WITHDRAWAL LIBALITY, INTEREST, LIQUIDATED DAMAGES, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

    /s/ John R. Mooney
John R. Mooney